IDA SEYMOUR et al.

v.

SUSAN BOWLES et al.

*Opinion filed April 21, 1898.*

1. EVIDENCE—*admissibility of oral testimony in construing a deed.* Where the language of a deed is indefinite or obscure, oral testimony is admissible to show the circumstances surrounding the parties, to enable the court to read the deed in the light in which it was written, but not to contradict or vary the language used.

2. MISTAKE—*mere allegation of mistake of law not sufficient to warrant correction.* An allegation in a bill for partition, to the effect that in drawing up the deed under which complainants claim the word "heirs" was mistakenly used for "children," presents no case for the correction of the mistake or the reformation of the deed, as such a mistake is one of law.

3. DEEDS—*rule that word "heirs" may mean "children" applies to deeds as well as wills.* The rule that the word "heirs" may be given the meaning of "children," when it appears such was the intention of the party using it, applies in construing deeds as well as wills.

4. SAME—*when word "heirs," used in a deed, will be given meaning of "children."* A deed to a named grantee "and her minor heirs" will be construed as using the word "heirs" as a synonym for children, as the deed, upon its face, shows the ancestor to be living, and thereby excludes the possibility that the word "heirs" was used in its technical sense.

5. SAME—*deed construed as passing a life estate with remainder to the grantee's children.* A deed to a named grantee "and her minor heirs, and in case of the death of either of the heirs without issue the property right to revert back to the surviving heirs," will be construed as passing a life estate, only, to the grantee, with remainder to her then minor children who should survive her, or if any of them should then be dead leaving issue, to such issue.

6. SAME—*when deed does not create estate in co-tenancy.* A deed to a named grantee "and her minor heirs" will not create an estate in co-tenancy, although the word "heirs" is given the meaning of "children," where it is further provided that in case of the death of any of the heirs without issue the property right shall revert back to the surviving heirs.

7. PARTITION—*partition cannot be had before interests of parties are definitely ascertained.* Remainder-men are not entitled to partition of lands subject to the interest of the life tenant, where, by the terms of the deed under which they claim, the interests of the parties cannot be definitely ascertained until the death of the life tenant.

APPEAL from the Circuit Court of Montgomery county; the Hon. JACOB FOUKE, Judge, presiding.

William Bowles, and Susan, his wife, on January 4, 1878, conveyed certain real estate to William Beatty, their son-in-law. On the same day Beatty and wife executed a deed, as follows:

"The grantor, William A. Beatty and Sarah A. Beatty, of the town of Raymond, in the county of Montgomery and State of Illinois, for and in consideration of one dollar in hand paid, convey and warrant to Susan Bowles and her minor heirs, and in case of the death of either of the heirs without issue the property right to revert back to the surviving heirs, of the town of Raymond, county of Montgomery and State of Illinois, the following described real estate:" (Here follows a description of the property, the deed concluding in the usual form.)

At the January term, 1896, of the circuit court of Montgomery county, Ida Seymour, William A. Bowles and Irene Mason, alleging that they were three of the minor children of Susan Bowles at the date of the last mentioned deed, filed their bill in chancery against Susie H. Parrott, the other of said minor children, and Susan Bowles, their mother, for the partition of the said lands. They alleged that at the time of the execution of the deed William Bowles had three adult children and the four above mentioned minor children; that he had previously provided for the adults by making advancements to them, and intended by this deed to give the minors an equal share of his estate; that he employed one Carter to prepare the deed, who, in doing so, "named Susan Bowles and her minor heirs as grantees, when, as a matter of fact, it was the intention of William Bowles to have said lands conveyed to Susan Bowles and her minor children, the complainants, Ida Seymour, William Bowles and Irene Mason, and also the defendant Susie H. Parrott, who were the minor children of the said William

Bowles;" that William Bowles was uneducated, and Carter did not distinguish the difference, in legal effect, between the words "heirs" and "children," and used the word "heirs" as a synonym of "children;" "that by using the word 'heirs' as a synonym for 'children,' as was done by said parties, the deed becomes intelligible, otherwise it is not so and is without meaning;" that by the deed complainants and Susie H. Parrott and Susan Bowles became seized, as tenants in common, in equal shares; that Susan Bowles has received rents and profits from the lands to the amount of $5000. The prayer is for partition and an accounting, and for the reformation of the deed to carry out the intention of William Bowles and William Beatty in its execution. The circuit court sustained a demurrer to the bill, and, the complainants electing to abide by the same without amendment, it was dismissed at their cost. To reverse that decree this appeal is prosecuted.

JAMES M. TRUITT, and HOWETT & JETT, for appellants.

LANE & COOPER, for appellees.

Mr. JUSTICE WILKIN delivered the opinion of the court:

The correctness of the decision of the court below depends entirely upon the question whether, upon a proper construction of the deed from Beatty and wife, the bill of appellants showed on its face that they were entitled to the relief prayed. In construing that deed it should be given the same effect as though it had been executed by William Bowles, it appearing from the bill to have been made at his instance and to accomplish his purpose.

When the language used by the parties to a contract or deed is indefinite or obscure, oral testimony is admissible to show the surrounding circumstances of the parties, for the purpose of enabling the court to view the instrument and construe its language from the same standpoint which they occupied when executing it, but

for that purpose only, and never to contradict, change or vary the language used. The allegation in the bill that in drafting the deed the word "heirs" was mistakenly used for "children," presents no case for the correction of a mistake or reformation of the deed. The alleged mistake is one of law, and cannot be corrected. (*Fowler* v. *Black*, 136 Ill. 363.) Looking at the deed itself, with such allegations of the bill as show the surrounding circumstances of its execution, for the purpose of construing it, we will consider all its language and give effect thereto, unless we find some part of it so repugnant or meaningless that we cannot do so.

If the word "heirs," as used in the granting clause, be given its technical meaning, no extended argument is necessary to show that it must be rejected as without force or meaning, because it is a rule of the common law that no inheritance can vest, nor any person be the actual, complete heir of another, till the ancestor be previously dead. *Nemo est hæres viventis.* (Coke's Litt. 22 *b;* 2 Blackstone's Com. 70, 107, 208.) Susan Bowles, being alive when the deed was executed, could have no "minor heirs." But is the word "heirs" here used in its technical sense? In answering this question we may properly consider the facts pleaded in the bill, which show the motive of William Bowles for causing the deed to be made and the circumstances surrounding its execution. We are of the opinion, however, that the deed shows on its face that by "minor heirs" was meant "minor children." It is well understood that such a meaning may be given to the term "heirs," when it sufficiently appears that such was the intention of the party using it,—and this rule applies to deeds as well as to wills. (*Griswold* v. *Hicks*, 132 Ill. 494.) In *Herd* v. *Horton*, 1 Denio, 165, which was a case involving the construction of a will, it was said: "Where the will recognizes the ancestor as living, and makes a devise to his heirs, *eo nomine*, this shows that the term was not used in the strict sense, but as meaning

the heirs apparent of the ancestor named." In *Heath* v. *Hewitt*, 127 N. Y. 166, the conveyance being by deed from Benjamin Heath to "the heirs of Warren Heath," reserving to the grantor and his wife each a life estate, and after their death to the said Warren Heath for life, the court quoted the foregoing language from 1 Denio, and added: "Now, in this case Warren Heath was living at the time of making the deed, which fact sufficiently appears in the deed, because the grantor reserved to him a life estate in the lands sought to be conveyed, and he had children living, among whom was the plaintiff in this action," and it was held that the word "heirs" was used as synonymous with "children." On principle the case is like the one at bar, and we think is well supported by reason and authority.

It cannot be supposed that the grantor in this deed intended to make a present conveyance to Susan Bowles and to her minor heirs at the same time. The fact that the deed shows on its face that Susan Bowles was then living by conveying to her, refutes all idea of the use of the words "minor heirs" in a technical sense. The mani-. fest intention of the grantor, from the language used, was to give Susan Bowles a life estate, with remainder to her then minor children who should survive her, or, if any of them should then be dead leaving issue, to such issue. By the terms of our statute the conveyance to Susan Bowles, though containing no words of inheritance, would be sufficient to convey the fee to her, were it not for other language clearly showing, as we think, the intention to give her but a life estate. But if we read the words "her minor heirs" as "her minor children," it is still clear there was no intention that the minors should take immediately, because it is expressly stated that in case of the death of either of them without issue the property right shall revert back to the surviving children. If the intention had been to vest an interest in the lands in the minor heirs with their mother, Susan Bowles, as

tenants in common with her, as is contended by complainants, the conveyance would have been to them without any reference to the future; whereas the language used clearly shows that as to them it was only to take effect in the future, the future period meant clearly being the death of the mother, and vest the title in the children then living, or if any should be then dead leaving issue, in such issue. We see no legal reason why effect cannot be given to that intention when the proper time arrives.

If it be said there is a lack of clearness in the use of the terms employed, still we are of the opinion that the phrase, "in case of the death of either of the heirs without issue," as used in the deed, means the death of either of such minor heirs (or children) without issue, before the death of Susan Bowles; that by the words "property right," in the connection in which they are used, the grantor meant the right which such child would have, at its death, in the property, subject to the prior estate of Susan Bowles, the mother,—in other words, its interest in the remainder.

This view does not, however, sustain appellants' bill. Counsel insist that on this bill they are at least entitled to a partition of the lands subject to the life interest of Susan Bowles. The bill seeks no such relief, as, manifestly, it could not at this time. Who will be entitled to take the property at the death of Susan Bowles, if the construction we place upon it be the correct one, can only be determined at her death. One or more of these complainants, or the defendant Susie H. Parrott, may then be dead without issue, in which event his, her or their interests would, under the terms of the deed, vest in the survivors, and hence the rights or interests of the respective parties cannot be determined now, and so, in any view of the case, the decree of the circuit court was proper. It will accordingly be affirmed.

*Decree affirmed.*